UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                    )
                                          )
GREAT ALLIANCE TITLE AND                  )      Case No. 07-13412-SSM
ESCROW, LLC                               )
                                          )      Chapter 11
                    Debtor                )

**MEMORANDUM OPINION**

Before the court is the objection of the reorganized debtor to Claim No. 4 filed by Janet

M. Meiburger, as trustee for the bankruptcy estate of John Andreas Tsiaoushis, in the nominal

amount of $1.00 for "improper settlement."  As a preliminary issue, the reorganized debtor

asserts, and Ms. Meiburger denies, that any claim is barred by the doctrine of *in pari delicto*.

Following oral argument, the court took the issues under advisement.  For the reasons stated, the

court will sustain the objection to claim, not because the claim is barred by the defense of *in pari*

*delicto,* but rather based on lack of standing.

Background

Great Alliance Title and Escrow, LLC ("Great Alliance") was a real estate title insurance

and settlement company.  It filed a voluntary petition for relief under chapter 11 of the

Bankruptcy Code in this court on November 8, 2007, and a liquidating plan was confirmed on

December 12, 2008.  John Andreas Tsiaoushis, the central figure in the present dispute, filed a

chapter 13 petition in this court on October 14, 2005.  His case was converted to chapter 11 on

February 9, 2006, and Ms. Meiburger was ultimately appointed as chapter 11 trustee.

One of the real estate settlements that had been conducted by the debtor involved the sale of property at 1506 Pennycress Lane, Virginia from Tsiaoushis to a confederate.  In connection with the sale, Tsiaoushis supplied Great Alliance with fictitious payoff statements for the existing first and second deeds of trust (both of which secured loans made by First Franklin Financial Corporation) against the property, with the remittance address being a post-office box that he set up and controlled.  Once in possession of the two payoff checks — which totaled $587,107.22 — he was able to negotiate them, thereby converting the funds to his own use.[1]  False certificates of satisfaction were then recorded releasing the First Franklin deeds of trust.  First Franklin eventually brought suit in the Circuit Court of Fairfax County, Virginia, to establish its lien against the property — which had been transferred and refinanced multiple times after the transaction at issue — and has filed two proofs of claim in the Tsiaoushis case in the total amount of $606,468.76.  A subsequent deed of trust holder (whose lien would be rendered worthless if First Franklin succeeds in its state court action) and its title insurer have filed claims in the amount of $717,840.49, and the title insurer has filed an additional claim in the amount of $268,000 with respect to a subordinate deed of trust that would also be rendered worthless.  Ms. Meiburger's claim against Great Alliance asserts that its negligence in accepting payoff statement from Tsiaoushis rather than obtaining them directly from the note holders facilitated his fraud on First Franklin and the subsequent deed of trust holders.

---

[1]  Tsiaoushis eventually pleaded guilty to federal mail fraud charges arising from this and other transactions by which he obtained money from financial institutions by means of materially false and fraudulent pretenses, representations, and promises in violation of 18 U.S. Code § 1341 and was sentenced to 70 months imprisonment.  *U.S. v. Tsiaoushis*, No. 1:08-cr-157 (E.D. Va., September 5, 2008).

2

The claim currently before the court was filed by Ms. Meiburger on March 12, 2008, in the nominal amount of $1.00.  The reorganized debtor's objection, filed on January 13, 2009, asserts simply that the claim "is unliquidated, contingent, and disputed, and is not supported by any documentation."  Ms. Meiburger filed a detailed response setting forth the basis of her claim (including copies of the agreed statement of facts in Tsiaoushis's criminal case and the amended complaint filed by First Franklin in the state court litigation).  The reorganized debtor then filed a reply asserting, in addition to the previous grounds, that any claim was barred by the doctrine of *in pari delicto*.

<u>Discussion</u>

I.

As filed, the objection asserted only that Ms. Meiburger's claim is "unliquidated, contingent, and disputed, and is not supported by any documentation."  As a threshold matter, the court agrees with Ms. Meiburger that a claim is not subject to disallowance simply because it is unliquidated or contingent.  The Bankruptcy Code's definition of a claim is very broad and specifically includes rights to payment that are unliquidated or contingent.  § 101(5)(A), Bankruptcy Code.  The grounds for disallowance of a claim — which are set forth in § 502 of the Bankruptcy Code — do not include the unliquidated or contingent nature of the claim.  Indeed, the provision for disallowance of a claim on the ground that it is unenforceable against the debtor under applicable law specifically *excludes* disallowance "because such claim is contingent or unmatured."  § 502(b)(1), Bankruptcy Code.  Rather, the Bankruptcy Code explicitly requires to court to *estimate* for purpose of allowance "any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case."

3

§ 502(c)(1), Bankruptcy Code.  Of course, if the claim is merely unliquidated, there is ordinarily

no reason why it cannot be liquidated by the bankruptcy court as part of the claim allowance

process.  But in this case, the amount, if any, to which Tsiaoushis's bankruptcy estate is entitled

is dependent on the resolution of the state court litigation brought by First Franklin. At this point,

the court is without sufficient information to determine how long that process is likely to take;

but if, as the debtor asserts, awaiting the outcome of that litigation would cause an unwarranted

delay in making distribution to creditors under the liquidating plan, the court has ample authority

under Section 502(c)(1) to estimate the claim so that the distributions can be made.

A claim is also not subject to disallowance simply because it is "disputed."  It is,

however, subject to disallowance if it is determined by the court to be "unenforceable against the

debtor or property of the debtor, under any agreement or applicable law for a reason other than

because such claim is contingent or unmatured."  § 502(b)(1), Bankruptcy Code.  Thus, the

proper basis for objecting to a disputed claim is not to assert that it is "disputed" but that the

debtor is not liable under applicable non-bankruptcy law.  Such an objection initiates a contested

matter, and the court then determines whether or not the claim is valid, which ordinarily requires

an evidentiary hearing.

## II.

The reorganized debtor, however, argues that an evidentiary hearing is not needed

because the claim articulated by Ms. Meiburger — since it arises out of the debtor's own fraud

— is barred by the common-law doctrine of *in pari delicto*.  That doctrine has been described by

the Fourth Circuit as "an affirmative defense that bars a wrongdoer from recovering against his

alleged coconspirators."  *Logan v. JKV Real Estate Services (In re Bogdan),* 414 F.3d 507 (4th

4

Cir. 2005); *see, also, Grassmeuck v. American Shorthorn Assn.*, 402 F.3d 833, 837 (8th Cir.

2005) (explaining that *in pari delicto* is "the principle that a plaintiff who has participated in

wrongdoing may not recover damages resulting from the wrongdoing.")  Of course, no one is

accusing Ms. Meiburger of wrongdoing.  But to the extent she is pursuing Tsiaoushis's own

cause of action, her claim cannot rise any higher than his and is subject to any defense that could

have been raised against him, including the defense of *in pari delicto*.  *Grassmeuck*, 402 F.3d at

836.  The defense would not apply, however, to statutory causes of action that belong to the

bankruptcy estate, such as avoidance actions, even though Mr. Tsiaoushis may have been

culpably involved (for example, by fraudulently transferring assets).

The difficulty with the present case lies in pinning down the exact nature of the trustee's

claim.  Certainly, it is not an avoidance action.  And it is equally certain that if Tsiaoushis,

having been sued by First Franklin or the subsequent mortgage lenders or their title insurers, had

asserted an indemnity or contribution claim against Great American on the ground that its

negligence allowed him to carry out the fraud, such a claim would have been barred by the

doctrine of *in pari delicto*.  As articulated by Ms. Meiburger, however, the theory of recovery is

that Great Alliance "should bear a portion of the losses" which are being imposed on

Tsiaoushis's creditors as a result of Great Alliance's negligence, and she likens her claim to the

one approved by the Fourth Circuit in *Bogdan.*

The debtor in that case, Michael Bogdan, had engaged in what the opinion described as a

"real estate 'flipping scheme' that defrauded numerous mortgage lenders by obtaining under-

collateralized loans to purchase properties in Baltimore City."  *Bogdan*, 414 F.3d at 509.  The

trustee obtained unconditional assignments from the defrauded mortgage companies of their

claims against various real estate appraisers, settlement agents, mortgage brokers, and title insurance companies who allegedly participated in the scheme and then brought suit against them. *Id.* at 510. The bankruptcy court dismissed the suit on the ground of lack of standing and *in pari delicto*, and the district court affirmed. *Id.* at 509-10. The Fourth Circuit, however, reversed, reasoning that property of the estate includes not only the debtor's own causes of action, but property that is subsequently acquired by the estate, and that the trustee had standing to assert the claims, since they were being brought for the benefit of the bankruptcy estate, not the assigning creditors. *Id*. at 512. And because the claims would not have been subject to an *in pari delicto* defense if brought by the defrauded mortgage companies, they were not subject to such a defense simply because they had been assigned to the trustee, notwithstanding the possibility that the wrong-doing debtor could benefit in the unlikely event that administration of the estate produced a surplus.. *Id.* at 514.

In reaching this conclusion, the Court carefully distinguished the Supreme Court's opinion in *Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), which the district court had relied upon. In that case, a bankruptcy trustee had brought suit against the underwriter of the debtor's debentures for damages sustained by the debenture holders when the underwriter failed to monitor the debtor's asset-liability ratio. The Supreme Court affirmed the dismissal of the suit, holding essentially that there was no provision of bankruptcy law that allowed a trustee to sue on behalf of creditors of the estate. *Bogdan*, 414 F.3d at 511, *citing Caplin*, 406 U.S. at 428. The difference in *Bogdan*, the Fourth Circuit explained, is that—because of the unconditional assignments—the trustee was suing on behalf of the bankruptcy estate, not the defrauded creditors. *Bogdan*, 414 F.3d at 511-12.

6

In this case, Ms Meiburger characterizes her claim against Great American as the functional equivalent of the claims brought by the trustee in *Bogdan*.  Although she candidly admits that she is not proceeding as assignee of First Franklin or the other defrauded creditors, she argues that the lack of formal assignments should not matter, because the assignments in *Bogdan* "were nothing more than legal fictions."  Opposition to Debtor's Objection to Claim, p. 6.  This is so, she says, because the trustee in *Bogdan* paid nothing for the assignments and because the assigning creditors were in any event the primary creditors and for that reason would receive the lion's share of any recovery.  While the argument has a surface appeal, it runs squarely afoul of the holding in *Caplin*.  Put another way, without an actual assignment from Tsiaoushis's defrauded creditors, Ms. Meiburger is in the position of derivatively asserting their claims and thus doing precisely what *Caplin* teaches she cannot do.  In short, whether a "legal fiction" or not, the assignments were crucial to the analysis in *Bogdan*.  With them, Bogdan's trustee was asserting claims that belonged to the estate; without them, he would have been asserting claims that belonged to the creditors, a course of action barred by *Caplin*.  For that reason, even though Ms. Meiburger's claim against Great American is not subject to the defense of *in pari delicto*, it fails for the more fundamental reason that without a formal unconditional assignment of the underlying claims held by the injured creditors, she lacks standing to assert it.

A separate order will be entered disallowing Claim No. 4.

**July 5, 2009**

Date: _____

Alexandria, Virginia

**/s/ Stephen S. Mitchell**

_____
Stephen S. Mitchell
United States Bankruptcy Judge

**ENTERED ON DOCKET: JULY 5, 2009**

7

Copies to:

Kermit A. Rosenberg, Esquire
Tighe Patton Armstrong Teasdale, PLLC
1747 Pennsylvania Ave., Suite 300
Washington, DC  20006-46604
Counsel for the reorganized debtor

Janet M. Meiburger, Esquire
The Meiburger Law Firm, P.C.
1493 Chain Bridge Road, Suite 201
McLean, VA 22101
Chapter 11 trustee of the estate of John Andreas Tsiaoushis